Daniel P. Collins (State Bar Id No. 009055)
**COLLINS, MAY, POTENZA, BARAN & GILLESPIE, P.C.**
Chase Tower, 22nd Floor
201 North Central Avenue,
Phoenix, Arizona 85004-0022
Telephone (602) 252-1900
Facsimile (602) 252-1114
Email: dcollins@cmpbglaw.com
Attorneys for the Debtor/Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: ) | |
| ) | **Chapter 11** |
| **SUN WEST BOTTLERS, LLC, an Arizona** ) | |
| **limited liability company,** ) | **Case No. 2:09-bk-11283 RJH** |
| ) | |
| Debtor. ) | **DEBTOR'S MOTION FOR** |
| ) | **ORDER AUTHORIZING AND** |
| ) | **APPROVING THE SALE OF** |
| ) | **DEBTOR'S ASSETS, FREE AND** |
| ) | **CLEAR OF ANY LIENS OR** |
| ) | **ENCUMBRANCES AND** |
| ) | **AUTHORIZE THE** |
| ) | **ASSIGNMENT OF DEBTOR'S** |
| ) | **LEASE** |

The chapter 11 debtor-in-possession, Sun West Bottlers, LLC ("Debtor" or "Sun West"), by and through its attorneys, Collins, May, Potenza, Baran & Gillespie, P.C. ("CMPBG"), hereby submits this motion requesting entry of an Order of this Court authorizing and approving the sale ("Sale") of substantially all of the Debtor's assets, free and clear of liens, claims, and interests and authorizing the assignment of the Debtor's real property lease ("Willetta Lease") of its operations facility. The Debtor files this motion ("Motion") pursuant to sections 105, 363, and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

1

Rules"). The Debtor's assets ("Assets") consist of all of the Debtor's non-cash personal property, including but not limited to, the following: all water purifying, bottling, and labeling equipment; all delivery trucks, forklifts, tools and other related machinery; all bottling materials, labels, and inventory; any and all accounts receivables; any and all contracts; and any and all lawsuits or claims. The Debtor proposes to sell the Assets strictly on an "as is, where is" basis with no warranties of any nature.

This Motion is supported by the accompanying Memorandum of Points and Authorities, attached exhibits, and the entire record before the Court, all of which are incorporated herein by this reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

**Jurisdiction**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor operates its business and manages its property as a debtor-in-possession. No trustee or examiners have been appointed, and no official committee of unsecured creditors has yet been formed.

3. Relief is sought primarily under 11 U.S.C. §§105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006.

**Factual Background**

4. The Debtor is in the business of bottling and selling purified, private labeled bottled water and distributing its products throughout the metropolitan Phoenix area as well as Las Vegas and Southern California. The Debtor was organized and began business in April of 2004. In 2007 the Debtor attracted the attention of investor Bruce Friedman ("Friedman") and his company Diversified Lending Group (collectively "DLG") who saw in the Debtor's facility the potential for growth throughout the country. Early in 2007, DLG began loaning money to

the Debtor in preparation for an expansion effort. On August 11, 2007, Friedman became the managing member of the Debtor. On or about May 15, 2007, DLG acquired a 100% ownership interests in the Debtor.

5. The Debtor's current management began working with Sun West at or about the time DLG began financing the Debtor's 5 plant regional expansion efforts. The current management worked diligently during 2007 and 2008 to prepare for the anticipated expansion. The first step in the Debtor's expansion efforts was to purchase Clearwater Beverages, one of three competitors in Arizona, and to move from their 17,000 square foot facility at 2121 W. Willetta ("Willetta") to the Clearwater 42,000 square foot facility located at 5530 W. Bethany Home Rd., Glendale, AZ. The Debtor's rent more than tripled when it moved into the Clearwater facility. In addition, the Debtor hired additional employees to train them for the anticipated future expansion. The combination of higher rent, overstaffing, and general high spending caused the Debtor to lose on average approximately $80,000 per month during 2008. However, notwithstanding the monthly losses the Debtor stayed in business and remained optimistic due to continued cash infusions from DLG.

6. In March 2009, the Securities and Exchange Commission ("SEC") began an investigation of DLG. Eventually all its assets were placed in a federal receivership and David Gill ("Mr. Gill") was appointed by the U.S. District Court, Central District of California to serve as receiver.

7. Six months prior to the SEC receivership action, all funding to the Debtor ceased. The Debtor immediately cut back its costs and put all expansion plans on pause. However, the significant debts incurred by the Debtor could not be timely serviced by Sun West.

8. On April 30, 2009, Friedman resigned as managing member of the Debtor and appointed Tina Placourakis the CEO and managing member of the Debtor. On May 22, 2009 ("Petition Date"), the Debtor filed its voluntary chapter 11 bankruptcy petition.

9. Throughout its first three months in bankruptcy, the Debtor focused on reducing its operation to a point where it could be independent and function efficiently without the need

for financing from an outside source. This process has been painful and difficult for the Debtor's management. The Debtor's employees have been forced to take pay cuts and the Debtor needed to lay off workers, sell equipment, and relocate its operations back to Willetta. The Debtor's Clearwater facility lease was rejected and its post-petition use of that property was fully paid. The new Willetta lease was approved by order of this Court.

10. Currently, the Debtor has all three bottling lines fully operational at its leased Willetta plant. Since the Debtor has returned to Willetta, the Debtor has been working four day weeks to limit costs. The Debtor is averaging production of 1,000 cases (24 bottles per case) of bottled water per shift. All 3 bottling lines are fully functional and collectively produce approximately 2,400 cases of bottled water of various sizes, ranging from 12 oz. to 1 gallon, per shift. Depending on the bottle size, a case may contain 1 to 24 bottles in a case. This higher production efficiency will greatly increase the likelihood of success in the future. However, the Debtor is reaching the tail end of its high season and is facing a large drop in demand as the weather cools. This will cause a serious stress on this Debtor which is already existing hand to mouth.

**Debtor's Financial Position**

11. The Debtor received pre-petition financing exclusively from DLG. The Debtor's schedules list DLG as having a disputed secured claim of $4,762,007.41. DLG filed with the Arizona Secretary of State a UCC-1 Financing Statement claiming a secured interest in all the Debtor's equipment, inventory and accounts receivable but has not produced to the undersigned a security agreement supporting its UCC-1. Even if DLG's claim is not secured, its claim is far and away the largest of the estate's unsecured claims. According to the Debtor's analysis, all claims against the estate, other than those of DLG total $143,820.25. This sum totals approximately 3% of DLG's claim.

12. Since filing its chapter 11 petition the Debtor has not received any debtor-in-possession financing. With the authority of this Court, the Debtor sold certain excess equipment to raise the capital needed to remain in business during this chapter 11 proceeding. Much of that

money was used to pay priority rent claims and to cover the Debtor's move to Willetta. The Debtor currently now has very few reserve funds and, although it has cut its monthly losses substantially, the Debtor is still operating at a loss. It is likely the Debtor will require new financing in the future to remain in business.

**Relief Requested**

13. Subject to approval of the Bankruptcy Court, the Debtor has an agreement ("Agreement") proposing to sell substantially all of the Assets of the Debtor, free and clear of any liens or encumbrances, to Sun West Bottlers H2O, LLC ("Buyer"), a newly created entity formed by the Debtor's manager (Tina Placourakis), controller (Lance Neill) and engineer (Stan Walker). Debtor seeks an Order from this Court authorizing the Sale of all of the Assets to Buyer under the following terms:

    A.    <u>Sale Terms</u>: Buyer will purchase the Assets free and clear of all liens, claims and interests, "as is, where is." There will be no warranties since the sale will be strictly "as is, where is." Buyer will assume the Debtor's lease of the Willetta facility. Buyer will pay $300,000.00 over 30 months at a 30 year amortization with a 5% interest rate. Monthly payments will begin the first day of the month after entry of a final order of this Court approving the sale. Payments will equal $1,342.00 per month with a lump sum balloon payment due at the end of the 30 months. Such payments shall be made directly to Debtor's counsel to be held in trust pending the disbursements called for in paragraph D below. This carry-back obligation shall be secured by a lien in favor of Debtor against all the sale Assets, together with after-acquired personal property of the Buyer. Debtor's counsel shall prepare the Note, Security Agreement andUCC-1 financing statements.

    B.    <u>Court Approval</u>: The Agreement proposed by the Debtor is subject to Court approval. The sale shall be subject to higher and better offers presented to the Debtor and the Court at the sale hearing ("Hearing").

C. <u>Hearing</u>: The date and timing of the Hearing will be noticed out to all creditors and interested parties.

D. <u>Disbursement of Sale Proceeds</u>: The Debtor proposes to use the proceeds of the Sale to pay creditors as follows:

1. The Debtor proposes to pay all administrative claims in full. Counsel for the Debtor is presently holding $25,000 in trust and is owed approximately $50,000 to date.

2. The Debtor proposes to use 50% of the remaining funds to pay all priority tax claims (approximately $70,000) with the remainder of the 50% to be paid to general unsecured creditors (exclusive of DLG) on a pro rata basis.

3. The Debtor proposes to use the remaining 50% of the sales proceeds to pay DLG.

4. The disbursements called for herein shall be paid quarterly to priority and general unsecured creditors and DLG. Such payments shall be from the monthly payments made by the Buyer to Debtor's counsel.

**Reason for Proposing a § 363 Sale of Debtor's Assets**

14. The Debtor proposes the Sale in order to maximize the amount of money that can be paid to pay creditors. The possible alternatives to a §363 sale of the business as a going concern are a liquidation of the assets through auction or some other liquidation process or reorganization through a chapter 11 plan. The Sale proposed by the Debtor presents the highest likely return for creditors as it is anticipated a chapter 11 plan may well cost the estate an additional $25,000.

15. Liquidation would provide the Debtor with substantially less value than the proposed Sale. An appraiser has recently provided the Debtor with a valuation the liquidation value of all of the Debtor's assets would be below $125,000.00.

16. The Debtor's current equity holder is not in a position to provide any new value or to secure additional financing to assist in a reorganization efforts. The current equity holder is subject to a receivership appointed by the SEC.

17. Under the Buyer's proposal, it will retain Debtor's existing management and all Debtor's existing employees. This will result in saving 10 jobs, a factor of grave importance to the Debtor's management.

**Form and Manner of Giving Notice**

Pursuant to Bankruptcy Rule 6004, the Debtor will provide notice of the proposed Sale and Sale Hearing. The Debtor will cause a copy of the Sale Motion, with Exhibits, together with a Notice of Hearing, to be served by first class mail on each of the following:

    A. The Office of the United States Trustee;

    B. Buyer;

    C. DLG, via its court-appointed receiver, Mr. Gill;

    D. The Internal Revenue Service and the Arizona Department of Revenue

    E. All parties who have requested notice in this case pursuant to Bankruptcy Rule 2002(g);

    F. All creditors listed on the mailing matrix for this case; and

    G. All persons or entities who, in the course of these bankruptcy proceedings, have expressed an interest in buying some or all of the Debtor's Assets.

The Debtor requests the Court find under the circumstances that no other or further notice of the Sale or Sale Hearing is warranted or required.

**Legal Analysis**

### POINT ONE

### The Court Should Approve the Sale

### Under 11 U.S.C. § 363(b)

Pursuant to 11 U.S.C. §363(b), a trustee (or debtor-in-possession) may sell property of the estate. Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). Pursuant to 11 U.S.C. § 1107, a debtor in possession shall have the rights and powers of a trustee. The Bankruptcy Code does not set forth a standard for

determining when it is appropriate for a court to authorize the use, sale, or lease of assets. However, most courts have held that the decision to sell assets should be based on the sound business judgment of the Debtor. *Sunwest Bank v. Walter (In re Walter)*, 83 B.R. 14 (9th Cir. BAP 1988); *See also In re Chateaugay Corp.,* 973 F.2d 141 (2d. Cir. 1992) (holding that a judge determining a §363(b) application must find from the evidence presented a good business reason to grant such application).

Here, it is clear that the Debtor's decision to sell its business as a going concern meets the business judgment standard set by case law. Specifically, the Debtor has considered its options and has exercised its business judgment in determining that a sale of the Assets is the best option for both the Debtor's employees and for creditors of the estate. The Debtor has obtained an appraisal of its assets and believes that a liquidation of the assets would result in a lower return for creditors of the estate. The Debtor also knows that attempting a reorganization through a chapter 11 plan would drastically increase the estate's administrative expenses which would lower the return to unsecured creditors. A §363 sale of the business as a going concern will, in the estimation of Debtor's management, produce the greatest value for the Debtor's business. The Debtor acknowledges that in the Ninth Circuit, courts disfavor *"sub rosa"* or "creeping" plans of reorganization under the guise of a 363 Sale. *See In re Walters,* 83 B.R. 14. Specifically, in *In re Work Recovery,* 202 B.R. 301 (Bankr.D.Ariz. 1996), the Court stated:

> The *Braniff* court recognized that §363 had a purpose, that is, to authorize post – petition sales or leases when required, and not turn each hearing into a "mini-hearing on plan confirmation." In making such determination, a bankruptcy court must consider several factors, among them:
> 
> 1. Has the debtor articulated a business justification for the request;
> 2. Is it a good business judgment for the debtor to enter into the proposed transaction;
> 3. Will the proposed transaction further the diverse interests of the debtor, creditors and equity holders alike;

4. Is the asset increasing or decreasing in value;

5. Does the proposed transaction specify terms for adoption of the reorganization plan (as in *Braniff*); and

6. Will approval of the proposed transaction effectuate a de facto reorganization in such a "fundamental fashion" as to render creditors' rights under the other provisions of chapter 11 meaningless.

*Id. at 303-304.*

In this case, the dangers of a "*sub rosa*" or "creeping" plan as discussed in *In re Work Recovery* do not exist. The Debtor is proposing a sale of all of its assets but is not doing so to limit the rights of creditors or equity holders. The debtor is attempting to provide the highest possible return for all parties involved. DLG is both the only equity holder, as well as the Debtor's largest creditor. Mr. Gill, the receiver who currently controls DLG's assets, has approved this proposed sale and is believed to support this Motion. The Debtor contends the proposed sale is in the best interest of the Debtor's estate and should not be denied as a "*sub rosa*" or "creeping" plan.

Although Buyer is comprised of managers and employees of the Debtor, the terms of the Agreement were negotiated in good faith and accurately portray the market value of the Debtor's business.

Debtor also requests that any party wishing to propose a higher or better offer at this Court's sale hearing be required to provide to the Debtor's counsel, not later than 48 hours (2 business days) before the sale hearing, proof of the bidder's ability to fully and timely close on its bid to purchase the Assets. Any prospective bidder will also be required to sign a confidentiality agreement in a form acceptable to the Debtor before the Debtor or its counsel will proved any due diligence information to such bidder.

9

# POINT TWO

## The Purchaser Should Take All Assets from the Sale Free and Clear of any Liens or Encumbrances Pursuant to §363(f) and Be Afforded All Protections Available under § 363(m) as a Good Faith Purchaser.

Pursuant to § 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of liens, claims encumbrances, rights of setoff, recoupment, and deduction if at least one of the following is satisfied:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such a property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

The Debtor believes that its Assets are not encumbered by any liens or that DLG's liens are the subject of a bona fide dispute. Additionally, even if DLG does have a valid lien on the Assets, Mr. Gill, the receiver controlling DLG, has or will consent to the sale. Therefore, the Court should find that the Motion meets the requirements of §363(f).

Similarly, Section 363(m) of the Bankruptcy Code provides that "the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith…" 11 U.S.C. §363(m). The sale will be adequately noticed to all potential buyers known to the Debtor or its counsel. Accordingly, the Debtor requests the Court determine that the Purchaser is acting in good faith and is

therefore entitled to the protections of the good faith purchasers under section 363(m) of the Bankruptcy Code.

### POINT THREE

### The Debtor Has the Authority to Assign Contracts Necessary to Consummate the Sale Pursuant to 11 U.S.C. §365

Section 365(a) of the Bankruptcy Code authorizes a debtor-in-possession to assume, assign, or reject an executory contract or unexpired lease, subject to bankruptcy court approval. 11 U.S.C. §365(a). In this case, the Agreement requires such action as part of the sale terms in regard to the Debtor's Facility ("Assigned Lease").

The standard which is typically applied to determine whether an executory contract or unexpired lease should be assumed has been the court's deference to the debtor's reasonable "business judgment" that the assumption is in the best interests of the bankruptcy estate and its creditors. *In re Chi- Feng Huang,* 23 B.R. 798, 800 (9th Cir. Bap 1982). Section 365(b) of the Bankruptcy Code requires a debtor-in-possession to satisfy certain requirements at the time of assumption if a default exists under the contract to be assumed. Section 365(f) allows the debtor to assign the contract after it has been assumed and adequate assurance has been provided to the leasor.

In this case, the Court has already approved the Debtor's assumption of the Willetta lease. The Debtor has provided Willetta with a security deposit of first and last months rent and has the lease is not in default. The Debtor plans to assign the lease to Buyer, who, in turn, will take over the payment obligations from the Debtor and will provide the necessary assurance required by §363(f). It is believed the Willetta landlord will consent to the assignment of its lease to the Buyer.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an Order:

1. Authorizing and approving the Sale of all the Debtor's Assets, free of all liens and encumbrances, as is where is, pursuant to the terms of the Sale Agreement between the Debtor and Sun West Bottlers H2O or to such higher and better offer approved by the Court;

11

2. Authorizing and approving the assignment of the Willetta lease from the Debtor to Sun West Bottlers H2O or to such higher and better pre-qualified offer approved by the Court; and

3. Authorizing and approving the form and manner of providing notice of such Sale through an open bid at the Sale Hearing.

DATED this 4th day of November, 2009

COLLINS, MAY, POTENZA, BARAN & GILLESPIE, P.C.

By /s/ Daniel P. Collins   Bar # 009055
  Daniel P. Collins
  Attorneys for Debtor-In-Possession,
  Sun West Bottlers, LLC.

Copy of the foregoing
mailed this 4th day
of November, 2009 to:

Edward K. Bernativicius, Esq.
United States Trustee
230 North First Avenue, Suite 204
Phoenix, Arizona 85003-1706

David Gill, Esq.
2029 Century Park East, 3rd Floor
Los Angeles, California 90067
Receiver for Diversified Lending Group, LLC
and Bruce Friedman

Richard L. Cobb, Esq.
Lake & Cobb, PLC
1095 West Rio Salado Pkwy, Suite 206
Tempe, Arizona 85281-0001
Attorney for West Coast Containers

1. Thomas C. Axelsen, Esq.
Mohr Hackett Pederson Blakley & Randolph, PC
2800 North Central Ave., Suite 1100
Phoenix, Arizona 85004-1043
Attorney for Tom Tait

Mark B. Pyper, Esq.
Owens & Pyper, PLC
3030 N. Central Ave., Suite 1406
Phoenix, Arizona 85012
Attorney XND Technologies, Inc.

Michael R. King, Esq.
Gammage & Burnham, P.L.C.
Two North Central Avenue, 18th Floor
Phoenix, Arizona 85004
Attorney for Clearwater Beverage Group, LLC

/s/ Lisa Harnack