Daniel P. Collins (State Bar Id No. 009055)
**COLLINS, MAY, POTENZA, BARAN & GILLESPIE, P.C.**
Chase Tower, 22nd Floor
201 North Central Avenue,
Phoenix, Arizona 85004-0022
Telephone (602) 252-1900
Facsimile (602) 252-1114
Email: dcollins@cmpbglaw.com
Attorneys for the Debtor/Debtor in Possession

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| SUN WEST BOTTLERS, LLC, an Arizona limited liability company, | Case No. 2:09-bk-11283 RJH |
| Debtor. | DEBTOR'S MOTION FOR ORDER (1) AUTHORIZING AND APPROVING THE SALE OF DEBTOR'S ASSETS, FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, AND (2) AUTHORIZING THE ASSIGNMENT OF DEBTOR'S WILLETTA LEASE |

The chapter 11 debtor-in-possession, Sun West Bottlers, LLC ("Debtor" or "Sun West"), by and through its attorneys, Collins, May, Potenza, Baran & Gillespie, P.C. ("CMPBG"), hereby submits this motion ("Motion") requesting entry of an Order of this Court (1) authorizing and approving the sale ("Sale") of substantially all of the Debtor's assets outside the ordinary course of business and free and clear of liens, claims, and interests pursuant to 11 U.S.C. § 363(b), (f) and (m), and (2) authorizing the Debtor to assign to the purchaser that certain real property lease ("Willetta Lease") of Debtor's operations facility located at 2121 W. Willetta in Phoenix, Arizona, pursuant to 11 U.S.C. § 365. This Motion pertains to the assets

1

owned by the Debtor (the "Assets"), which consist of all of the Debtor's non-cash personal property, including but not limited to, the following: all water purifying, bottling, and labeling equipment; all delivery trucks, forklifts, tools and other related machinery; all bottling materials, labels, and inventory; any and all contracts; and any and all lawsuits or claims. However, all of Debtor's cash and accounts receivable are excluded from the Assets proposed to be sold. The Debtor's cash and accounts receivable will be retained by Debtor.

First Pacific Investments Limited (BVI) ("Buyer") has offered to purchase the Assets and assume the Willetta Lease (defined below) for the amount of $322,000.00 pursuant to the terms of that certain Asset Purchase Agreement dated May 17, 2010 (the "Purchase Agreement"). A copy of the Purchase Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

This Motion is supported by the accompanying Memorandum of Points and Authorities, attached exhibits, and the entire record before the Court, all of which are incorporated herein by this reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **Background and Summary of Sale Terms**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2. On May 22, 2009, the Debtor filed its voluntary chapter 11 bankruptcy petition.

3. The Debtor operates its business and manages its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

4. No trustee or examiners have been appointed, and no official committee of unsecured creditors has yet been formed.

5. The Assets are property of this bankruptcy estate pursuant to 11 U.S.C. §541.

6. The Debtor files this Motion pursuant to sections 105, 363, and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7. The Debtor proposes to sell the Assets under the terms set forth in the Purchase Agreement, except as modified herein and subject to Court approval and higher and better offers at the hearing on this Motion (the "Sale Hearing"). Buyer has executed the Purchase Agreement, pursuant to which Buyer shall purchase the Assets free and clear of all liens, claims and interests for an amount of $322,000.00 (the "Purchase Price"). Buyer shall pay $138,000.00 of the Purchase Price at the Closing, which is to be no later than June 30, 2010. The Buyer shall pay the $184,000.00 balance of the Purchase Price (the "Carry Back Amount") within sixty days of the entry of an order by the Bankruptcy Court approving the sale of the Assets. The Carry Back Amount will be evidenced by a promissory note and secured pursuant to a security agreement and UCC-1 financing statement, granting a first-priority lien in favor of Debtor against the Assets and all other after-acquired personal property of the Buyer. The Buyer will purchase the Assets on an "as is" and "where is" basis and with no other express or implied warranties. The Assets to be sold to Buyer are more particularly described in the Purchase Agreement and the financial statements and equipment list dated March 18, 2010 attached as Exhibit A to the Purchase Agreement.

8. Additionally, the Debtor seeks authority from the Court to assign to the Buyer that certain Standard Industrial Lease between the Debtor (as Lessee) and Tait-Ritter, an Arizona general partnership (as Lessor) for property located at 2121 W. Willetta Street, Phoenix, AZ 85009, Parcel #109-02-010 (the "Willetta Lease"). The Willetta Lease is for a term of 37 ½ months which commenced on July 1, 2009, at an initial rental rate of $4,080 per month. Assignment of the Willetta Lease is requested because it is a condition precedent to the Purchase Agreement that the Willetta Lease be assigned from Debtor to the Buyer.

9.      The transactions contemplated by the Purchase Agreement are subject to: (1) a ten-day review period (i.e. through May 27, 2010), as set forth in Paragraph 3(a) of the Purchase Agreement; (2) Bankruptcy Court approval; and (3) higher and better offers presented to the Debtor and the Court at the Sale Hearing.

10.     Pursuant to Bankruptcy Rule 6004, the Debtor will provide notice of the proposed Sale and Sale Hearing. The Debtor will cause a copy of the Sale Motion, with Exhibits, together with a Notice of Hearing, to be served by first class mail on each of the following:

      a. The Office of the United States Trustee;

      b. Tait-Ritter;

      c. Buyer;

      d. DLG, via its court-appointed receiver, Mr. Gill;

      e. The Internal Revenue Service and the Arizona Department of Revenue;

      f. All parties who have requested notice in this case pursuant to Bankruptcy Rule 2002(g);

      g. All creditors listed on the mailing matrix for this case; and

      h. All persons or entities who, in the course of these bankruptcy proceedings, have expressed an interest in buying some or all of the Debtor's Assets.

The Debtor requests the Court find under the circumstances that no other or further notice of the Sale or Sale Hearing is warranted or required.

11.     The Debtor proposes that the proceeds from the sale of the Assets be disbursed as follows:

      a. The Debtor proposes to pay all administrative claims in full;

      b. The Debtor proposes to use 50% of the remaining funds ("Net Funds") to pay all priority tax claims (approximately $70,000) and then general unsecured creditors on a pro rata basis (exclusive of Diversified Lending Group ("DLG")); and

4

1         c. The Debtor proposes to use the remaining 50% of the Net Funds to pay DLG;

II. **Legal Argument**

    A. **The Contemplated Sale of the Assets Meets the Business Judgment Standard**

Pursuant to 11 U.S.C. §363(b), "the trustee after notice and a hearing, may…sell…, other than in the ordinary course of business, property of the estate." The decision to sell assets should be based on the sound business judgment of the Debtor. *Sunwest Bank v. Walter (In re Walter)*, 83 B.R. 14 (9th Cir. BAP 1988); *See also In re Chateaugay Corp.*, 973 F.2d 141 (2d. Cir. 1992) (holding that a judge determining a §363(b) application must find from the evidence presented a good business reason to grant such application).

The Debtor believes that selling its business as a going concern will maximize the value of the estate. Given that the Debtor will likely require new financing in the future to remain in business and the fact that Debtor's current equity holder cannot secure additional financing to assist in reorganization efforts, the two possible alternatives to a § 363 sale of the business as a going concern are (1) a liquidation of the assets through auction or some other liquidation process, or (2) reorganization through a chapter 11 plan. An appraiser has estimated that the liquidation value of all of the Debtor's existing equipment would be below $125,000.00. The Debtor believes that attempting a reorganization through a chapter 11 plan would drastically increase the estate's administrative expenses which would lower the return to unsecured creditors. Accordingly, the Sale proposed by the Debtor presents the highest likely return for creditors.

The proposed Sale meets the requirements of Bankruptcy Code Section 363(f). Pursuant to 11 U.S.C. § 363(f), a debtor may sell property free and clear of liens, claims encumbrances, rights of setoff, recoupment, and deduction if at least one of the following is satisfied:

    (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (2) such entity consents;

5

(3) such interest is a lien and the price at which such a property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

The Debtor believes that the Assets are not encumbered by any liens, except a lien asserted by DLG that is the subject of a bona fide dispute. Even if DLG does have a valid lien on the Assets, Mr. Gill, the receiver controlling DLG, has indicated he will consent to the sale. Therefore, the Court should find that the Debtor may sell the Assets free and clear of liens, claims encumbrances, rights of setoff, recoupment, and deduction.

The Debtor requests the Court determine that the Buyer is acting in good faith and is entitled to the protections of a good faith purchaser under 11 U.S.C. § 363(m). The proposed sale of the Assets will be adequately noticed to all potential buyers known to the Debtor or its counsel. The terms of the Purchase Agreement were negotiated in good faith and accurately portray the market value of the Debtor's business.

**B.** **Assignment of the Lease is Permitted Pursuant to 11 U.S.C. § 365**

Debtor requests the Court approve and authorize the assignment of the Willetta Lease from Debtor to the Buyer because such assignment is a condition precedent to the Purchase Agreement. Section 365(f) of the Bankruptcy Code allows the debtor to assign an unexpired lease after it has been assumed and adequate assurance has been provided to the lessor. The Debtor assumed the Willetta Lease pursuant to this Court's Order dated July 6, 2009 [DE 76]. The Debtor has provided Tait-Ritter (the landlord under the Willetta Lease) with a security deposit of first and last months' rent and is not in default under the Willetta Lease. Upon assignment of the Willetta Lease, the Buyer will take over the payment obligations from the Debtor and will provide the necessary assurance required by 11 U.S.C. § 363(f). It is believed the Willetta Landlord will consent to the assignment of the Willetta Lease to the Buyer.

Accordingly, the Court should approve the assignment of the Willetta Lease from Debtor to the Buyer.

### III. Conclusion

For the reasons set forth above, the Debtor respectfully requests that the Court enter an Order:

1. Scheduling this matter for a hearing ("Sale Hearing");

2. Authorizing and approving the Sale of all the Debtor's Assets, free of all liens, claims and interests pursuant to the terms of the Purchase Agreement between the Debtor and First Pacific Investment Limited or to such higher and better offer approved by the Court;

3. Authorizing and approving the assignment of the Willetta Lease from the Debtor to First Pacific Investment Limited or to such higher and better offer approved by the Court; and

4. Authorizing and approving the form and manner of providing notice of such Sale through an open bid at the Sale Hearing.

DATED this _25_ day of May, 2010.

COLLINS, MAY, POTENZA, BARAN & GILLESPIE, P.C.

By /s/ Daniel P. Collins   Bar # 009055
Daniel P. Collins
Attorneys for Debtor-In-Possession,
Sun West Bottlers, LLC.

Copy of the foregoing
mailed this _26th_ day
of May, 2010 to:

Edward K. Bernativicius, Esq.
United States Trustee
230 North First Avenue, Suite 204

7

Phoenix, Arizona 85003-1706

David Gill, Esq.
2029 Century Park East, 3rd Floor
Los Angeles, California 90067
Receiver for Diversified Lending Group, LLC
 and Bruce Friedman

Richard L. Cobb, Esq.
Lake & Cobb, PLC
1095 West Rio Salado Pkwy, Suite 206
Tempe, Arizona 85281-0001
Attorney for West Coast Containers

Thomas C. Axelsen, Esq.
Mohr Hackett Pederson Blakley & Randolph, PC
2800 North Central Ave., Suite 1100
Phoenix, Arizona 85004-1043
Attorney for Tom Tait

Mark B. Pyper, Esq.
Owens & Pyper, PLC
3030 N. Central Ave., Suite 1406
Phoenix, Arizona 85012
Attorney XND Technologies, Inc.

Michael R. King, Esq.
Gammage & Burnham, P.L.C.
Two North Central Avenue, 18th Floor
Phoenix, Arizona 85004
Attorney for Clearwater Beverage Group, LLC

/s/ Lisa Harnack

# EXHIBIT A

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("Agreement"), is made and entered into this 17th day of May, 2010,

**BETWEEN:**

**SUN WEST BOTTLERS, LLC** an Arizona Limited Liability Company whose principal place of business is located at 2121 W. Willetta, Phoenix, AZ 85009, (hereinafter referred to as **"SUN WEST"**),

and,

**FIRST PACIFIC INVESTMENT LIMITED (BVI)** whose principal office is located at 2901 W. Coast Highway Suite 200, Newport Beach, CA 92663, (hereinafter referred to as **"BUYER"**)

## RECITALS

WHEREAS, **SUN WEST** is the owner of certain assets presently located in the State of Arizona, and

WHEREAS, **SUN WEST** is a chapter 11 Debtor-in-Possession ("D.I.P") in the United States Bankruptcy Court for the District of Arizona ("Bankruptcy Court") at Case No. 2:09-bk-11283-RJH (the "Bankruptcy Case"), and

WHEREAS, **SUN WEST** desires to sell 100% of all of its assets except its cash and accounts receivables ("Assets"), and

WHEREAS, **BUYER** desires to acquire 100% of all of the Assets of **SUN WEST**, contingent upon the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Sale of Assets:**

    (a) **SUN WEST** hereby agrees to sell, convey, transfer, assign and deliver to **BUYER** on the closing date a 100% ownership of all Assets, including equipment listed in the financial statements and the equipment list dated March 18, 2010 attached hereto as Exhibit "A". In addition thereto, a complete customer list shall be provided to **BUYER** by **SUN WEST**.

1

(b) **BUYER** shall be entitled to retain, as its own, the name of **SUN WEST BOTTLERS** and any D/B/A's that have been utilized by **SUN WEST**.

2. Terms:

(a) The total purchase price shall be Three Hundred Twenty Two Thousand Dollars ($322,000) payable One Hundred Thirty Eight Thousand Dollars ($138,000) at the Closing (defined below) and the balance of One Hundred Eighty Four Thousand Dollars ($184,000) ("Carry Back Obligation") paid within Sixty (60) days of the entry of the Bankruptcy Court order approving the sale. The Carry Back Obligation is to be memorialized by a note, security agreement and UCC-1 financing statement which will include all of the sale Assets.

(b) **BUYER** commits to injecting into the operation of the **SUN WEST** business the sum of Fifty Thousand Dollars ($50,000) within the first thirty (30) days for operations post-Closing.

(c) **BUYER** shall assume **SUN WEST's** premises lease ("Premises Lease") with Tait-Ritter, an Arizona general partnership.

3. Contingencies: The following contingencies shall apply to this Agreement:

(a) There will be an inspection of **SUN WEST's** plant and equipment, satisfactory to the **BUYER**, no later than Ten (10) days from the execution of this Agreement.

(b) **BUYER** will assume no existing debt of **SUN WEST**, except the Premises Lease.

(c) **SUN WEST** has provided **BUYER** with a copy of the most current Premises Lease and **BUYER** will have the opportunity to negotiate directly with the landlord. **BUYER** will commit to operating in current facility as long as it remains economically viable. The only reason **BUYER** would consider relocating the business would be to accommodate additional business needs. However, the Premises Lease shall be fully assumed by and assigned to **BUYER**.

(d) The Assets of **SUN WEST** shall be delivered free and clear of any and all liens.

(e) Except for the sale of inventory and other products in the ordinary course of **SUN WEST's** business, there has been and will continue to be a freeze on the sale by **SUN WEST** of any and all assets and equipment listed in the financial statements and the equipment list dated March 18, 2010.

(f) **BUYER** will not assume the responsibility for any liens or taxes due and owing at the time of the execution of this Agreement.

(g) The entry of an order from the United States Bankruptcy Court in **SUN WEST'S** Chapter 11 bankruptcy proceeding approving the Asset Purchase Agreement executed by the parties hereto.

(h) The sale shall close (the "Closing") on or before June 30, 2010.

4. Employment of Personnel:

(a) **BUYER** shall retain the services of certain key employees of **SUN WEST** for a period of no less than three (3) months from Closing. The individuals included are Tina Marie Placourakis, Stan Walker, and Roseanne Ruiz. The **BUYER** will evaluate each employee and determine the future feasibility of retaining the services of each employee after the expiration of the three (3) month period of retention.

(b) Retained employees must continue their employment as instructed by **BUYER** for the three (3) month period Post-Closing. If such employees choose to terminate their employment before the end of the specified period, **BUYER** shall have no obligations to such employees thereafter.

(c) Each of the retained employees shall execute a 3-month non-compete agreement and shall not directly or indirectly, whether on their own behalf or on behalf of any other person, firm or other entity, provide any services or otherwise work for or aid any entity known to them during their employment by **SUN WEST** and/or **BUYER**. "Entity", for the purposes of this Agreement includes any other person or firm which had, has or may have a business relationship with **SUN WEST** or **BUYER**.

5. Buyer Intentions: **BUYER** intends to only bottle bottled water products for sale and distribution. No fruit or juice beverages will be bottled in this facility.

6. Assignability: **BUYER** has the right to assign the Assets and obligations obtained in this Agreement to any other entity and at any time after the execution of this Agreement.

7. Brokerage Commissions: **BUYER** shall pay a business brokerage commission equal to Eight Percent (8%) of the total consideration of the sale to Cassidy Turley BRE Commercial (Brandon Leach). Commissions will be paid as funds are paid to **SUN WEST** i.e. $12,000 when the first $138,000 is paid to **SUN**

3

WEST and $16,000 when the final $184,000 is received by **SUN WEST** from **BUYER**.

8. Enforceability: Subject to the contingencies stated herein, each of the provisions of this Agreement shall be enforceable independent of any other provision and independent of any other claim arising under the terms of this Agreement.

9. Severability: If at any time subsequent to the Closing date of this Agreement, any provision hereunder or any amendment hereto is held by any court of competent jurisdiction to be illegal, void or unenforceable, that provision will be of no force and effect, but the legality or unenforceability of that provision will have no effect upon and will not impair the validity or enforceability of any other provision of this Agreement or any amendment thereto.

10. Governing Law: This Agreement will be interpreted, construed and enforced in accordance with the laws of the State of Arizona.

11. Disputes: Any dispute arising out of this Agreement or any amendment thereto shall be determined by the Bankruptcy Court. The Bankruptcy Court shall award reasonable attorney fees and costs to the prevailing party.

12. Paragraph Headings: Paragraph headings are for reference only and will not be construed as substantive parts of this Agreement.

13. Modification: This Agreement may be modified only by written instruments signed by the parties hereto.

14. Counterparts: This Agreement may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

15. Entire Agreement: This Agreement, together with all exhibits, represents an integrated and exclusive agreement and understanding between the parties and, as of its effective date, supersedes all prior and contemporaneous agreements, negotiations representations and proposals, written or oral. This Agreement will be binding and inure to the benefit of the parties, respective successors, assigns and legal representatives, as applicable.

The balance of this page is intentionally left blank to provide for a full signature page.



IN WITNESS WHEREOF, each of the parties has duly caused this Agreement to be duly executed, as of the last date written below.

**SUN WEST BOTTLERS, LLC.**

By:_____

Title:_____

**FIRST PACIFIC INVESTMENT LIMITED (BVI)**

By: */s/ Raymond Chin*
RAYMOND CHIN

Title: <u>President</u>


**EXHIBIT A**

Sun West Bottlers

# Master Equipment List
## 12.09.09

| Value | Line | Machine | Serial # |
|---|---|---|---|
| $37,000 | 1 & 2 | AIS Semi Automatic Depallitizer - DOM-2006 | S/N 001 |
| $40,000 | 1 | Filler Specialties 12 head filler/capper/cap feeder.100bpm -DOM - 2001 | AWFS-12/4R - serial # 13601 |
| $32,500 | 1 | Quadrel Labeler DOM - 2007 | VERT ROLLER - S/N 58217/01 |
| $5,000 | 1 | VideoJet - Ink jet coder | Excel 178i P/N 375040-06 S/N 993480032WD |
| $70,000 | 1 & 2 | Arpac BPMP - 5152 Shrink Bundler and collation infeed. DOM - 2006 | S/N 8036 -2006 |
| | 1 & 2 | Outfeed belt | Model H2136 ----- S/N 0117 |
| $10,000 | 1 | Bosch - VF90 Conveyor unit with two Drives and returns. DOM - 2005 | |
| $75,000 | 2 | Filler Specialties 30 Head filler/capper/cap feeder.250bpm DOM - 2003 | AWFS-3010 - S/N 13406 |
| $15,000 | 2 | Ambassador packaging system labeler. DOM - 2006 | S/N 001 |
| $5,000 | 2 | VideoJet - Ink jet coder | Excel 178i P/N 375040-06 S/N 993470024WD |
| $10,000 | 2 | Bosch - VF90 Conveyor unit with two Drives and returns. DOM - 2005 | |
| $9,000 | 1,2 & 3 | Arpac Pallet stretch wrapper | PRO-4002-HC ---- S/N 8613 |
| $5,000 | 2 | VideoJet - Ink jet coder | Excel 178i P/N 375040-06 S/N 993470025WD |
| $5,000 | 3 | 3M Matic Tape machine 200a | S/N 3091 |
| $7,500 | 3 | Bosch - VF90 Conveyor unit with one drive and return DOM - 2007 | |
| $80,000 | 3 | Filler Specialties GWFS-248 - Gallon filler and capping sytem DOM -2006 | S/N 221006 |
| $5,000 | 3 | VideoJet - Ink jet coder | Excel 178i P/N 375040-06 S/N 993470028WD |

## Sun West Bottlers

| Price | Qty | Description | Serial/Notes |
|---|---|---|---|
| $15,000 | RO1 | 20 Gallon per minute RO System with softeners and Carbon filtration dom 2003 | |
| $1,800 | RO1 | Twin Pump System DOM - 2007 | |
| $12,000 | RO1 | O-zone and UV Skid with dual filters. DOM - 2007 | |
| $7,000 | | Le-Roy Compressor | CL25CUB-AH S/N 4559170 |
| $5,000 | | 5000 gallon tanks x 2 (opaque) | |
| $1,500 | | Piston Compressors | |
| $8,000 | | Toyota Electric Forklift | S/N 60903 |
| $8,000 | | Caterpillar Gas Forklift- | GL18K -Serial # CAT 810029 |
| $200 | | Myron TDS/PH meter | |
| $1,200 | | Incubator – Line labsModel 150 - S/N - V501-0108 | |
| $500 | | Pallet trucks x 2 | |
| $1,850 | | Unload pump for spring and distilled water. S/N 1091955 | |
| $14,000 | | 2006- Isuzu Truck 17950 GVW. | |
| $250 | | Taping m/c - Interpack model-VSG 2020TB S/N E04T124081 | |
| $3,500 | 1 | AIS Drop down vacuum conveyor | |
| $3,500 | 1 | AIS Drop down vacuum conveyor | |
| $4,500 | N/A | Hartness box erector | |
| $1,200 | | Debag Table | |
| $5,000 | 1 | Auto-labe – Labeler and wrap station - Model 830-RH. | Serial # 060254 |
| $1,500 | N/A | 3M Matic Tape machine 200a | S/N 5-7-57 |
| $5,000 | 3 | Auto-labe – Labeler and wrap station - Model 830-RH. | Serial # 43955 |
| $900 | | Ultra Violet Unit | |
| $1,800 | | Ozone Destruct Unit | |

Confidential